UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Case No.: 08-64252-wsd
                                                                Chapter 7
    GARY S. PAULI,                                          Hon. Walter Shapero

               Debtor.
_____/

## OPINION GRANTING MOTION FOR RELIEF FROM STAY
## WITH REFERENCE TO MORTGAGE ON 5750 BELLE RIVER ROAD,
## CHINA, TOWNSHIP, MICHIGAN

This particular proceeding in this Chapter 7 case was initiated by the March 12, 2009, filing by a Mortgagee's ("Mortgagee") servicer of a motion to lift stay with reference to a mortgage covering the Debtor's residence at 5750 Belle River Road, China Township, Michigan. The Court initially partially lifted the stay to permit the parties to negotiate a possible mortgage modification. Discussions, arguments, and attendant Court hearings occurred surrounding the procedures and paper work to be submitted by the Debtor to pursue a modification under the Government's so-called Government's Homeowners Assistance Mortgage Program, ("HAMP"), designed to provide relief to defaulting mortgagors and forestall or defer foreclosure actions. That program in substance, for those mortgagees who opt to participate in the program, involves an underlying participation agreement between the participating mortgagee and Fannie Mae or other similar agency holding or guaranteeing the mortgages involved. Pursuant to this underlying agreement, the participating mortgagees would offer mortgagors who met the income and other qualifications an agreement which, if they paid a specified mortgage payment for a period of three months and otherwise continued to qualify for the program and were not in default under that temporary payment

1

modification, would ripen into a permanent loan modification under specific terms and conditions, including revised interests rates, ultimate due dates etc.

As the Court understands it, HAMP specifically provides that a borrower will initially qualify if the verified income documentation confirms that the "monthly payment mortgage payment ratio" prior to the modification is GREATER than 31%. The "monthly payment mortgage ratio" is the ratio of (a) the borrower's current monthly mortgage payment, to (b) the borrower's monthly gross income. For example, if the current monthly mortgage payment was $1,000.00, and the monthly gross income was $3,500.00, the ratio would be 1,000 over 3,500, or 29%, so that a borrower would not qualify. On the other hand, if instead the monthly gross income was $3,000.00 instead of $3,500.00, the ratio would be 1,000 over 3,000, or 33%. Since 33% is greater than 31%, that borrower WOULD qualify. So, to the extent the denominator income increases (the numerator being static), the ratio and chances of qualification would decrease. Put somewhat differently, in order to initially qualify for the HAMP program the following steps are: (1) determine the Mortgagee's gross monthly income without deductions for taxes, or virtually anything else; (2) calculate 31% of that gross monthly income figure; and (3) compare the result in (2) with the current monthly mortgage payment. Thus, the key initial qualification components are the borrowers' (a) current monthly mortgage payment (including any tax and insurance escrow amounts), and (b) the current monthly gross income.

Debtor's mortgage note was dated May 5, 2004, and called for interest only monthly payments at a rate of 4.375% commencing June 1, 2004, of $871.35 for a period of 60 months until May 1, 2009. On that date the payments would change to principal and interest payments based on 2.14% over the then LIBOR interest rate, with a final due date of May 1, 2034. The interest rate

2

would adjust every six months based on that LIBOR formula with a maximum stated rate. The mortgage also provided for a monthly tax and insurance escrow payment.

In this case, the gross income of the Debtor initially used to make the foregoing analysis was $2,280.85, which the Debtor's non-debtor wife was receiving every two weeks and which calculated out to $4,401.70 gross monthly income for her. Absent any income earned by the Debtor, 31% of that figure would be $1,464.52. It was a fact that during the relevant times involved here the husband debtor was not earning any income. In December 2008, Debtor received a notice that because of escrow changes the monthly mortgage payment, including the escrow commencing February 1, 2009, would be $1,216.85. This necessarily must have been a combination of an interest only payment plus an escrow payment for insurance and taxes, for a total monthly payment of $1,216.85. That amount did not reflect any change that might have gone into effect on May 1, 2009, under the terms of the note, because by or at that time the Debtor had defaulted and it was not the Mortgagee's practice to initiate any such otherwise permitted change under default circumstances. If that was all that was to be taken into account, since the $1,216.85 monthly mortgage payment was less than the $1,464.52, Debtor would NOT have qualified for the regular HAMP program.

The end result of the HAMP application process in this case was that Debtor (and his wife) were tendered a HAMP Trial Period Plan ("Plan") which they signed on December 21, 2009. Among other things, it called for monthly mortgage payments of $1,143.64 for each of January, February, and March of 2010. That payment figure was stated to include an escrow payment of $378.30. It further stated that if those Plan payments were made and the other stated terms and conditions were met, Debtor and his wife would be tendered a Home Affordable Modification

3

Agreement, which in essence was permanent modification of the mortgage and note documents, to reflect the indicated modified payment schedule.

Fairly interpreted, the provisions of the Plan provide, and contemplate, (among other terms and conditions precedent to the effectuation of the indicated permanent modification agreement at the end of the three month trial period), that the monthly mortgage ratio at the time the permanent modification was to go into effect, must be or remain such as would qualify a borrower for the program. Thus, if for instance the monthly gross income, the denominator of the ratio, had increased from what had been used to initially qualify a borrower for the Plan, to a point resulting in the monthly mortgage ratio becoming LESS than 31%, a borrower would not be entitled to the permanent modification, notwithstanding the fact they may have made the three trial period payments and had otherwise complied with the other terms and conditions set forth in the Plan. That is exactly what the evidence indicates happened here. While the Plan was signed in December 2009, it had been formulated on the basis of income information provided a number of months earlier. As the process was essentially an ongoing one, at some point (possibly even before the Plan was actually signed), upon request, the Debtor and his wife supplied updated or more recent monthly gross income figures than were initially used to qualify them. It appears that sometime between May 2009 and December 2009, Debtor's wife received a pay increase and those supplied documents evidenced the increased amount. This indicated that such was then, or had become, $4,401.70 per month. Using this increased income, the monthly mortgage ratio would be 28% which is less than the 31% qualification ratio. The result was that on that basis, and for that reason, at some point Debtor and his wife were notified they no longer qualified for the HAMP permanent modification.

4

Following further proceedings before this Court and the Court's encouragement of the parties to try and settle the matter, the Mortgagee, in lieu thereof, offered the Debtor and his wife what was termed an Alternative Permanent Modification, which the Mortgagee saw fit to tender under the circumstances. It had initially lower monthly payments than the Plan provided for, but the payments and the interest rate increased over time and did not contemplate a potential principal reduction that the Mortgagee said the HAMP permanent modification would have provided for. Debtor and his wife decided to turn down that offer, thus putting the parties and the Court back in the posture of the Court needing to now decide whether or not to grant the relief initially sought by the Mortgagee, to-wit: lifting of the stay.

It should be noted that the Chapter 7 Trustee in this case filed his report on March 13, 2009, indicating he had fully administered the case and there would be no distributions. But for the ongoing controversy relating to the mortgage, a discharge would likely have already been issued. And once the relief from stay motion is finally disposed of, it will likely be issued - a fact pointed out as possibly making the relief from stay issue largely moot.

Notwithstanding the foregoing, Debtor posits the issue as essentially a simple contract question. The Debtor argues that (1) the Plan (and the permanent modification that it contemplated) was and became a binding agreement between Debtor and his wife on the one hand and the Mortgagee on the other; (2) under the terms of the Plan, the Debtor and his wife became legally entitled to the permanent modification because they met all of the terms and conditions incident to being issued such; (3) that being the case, the Mortgagee should be required to issue and execute the permanent modification documents, and the Mortgagee is in breach of the Plan for not doing so; and (4) such affords an appropriate defense to the lift stay motion of the Mortgagee. For its part,

the Mortgagee argues that (1) the Debtor and his wife do not themselves have appropriate standing to enforce for their own benefit the provisions of the HAMP program generally and the Plan in particular as part thereof, and (2) in any event, it was entirely within its rights in refusing to issue the permanent modification because Debtor and his wife became unqualified for the program, and thus a condition precedent to the issuance of the permanent modification was not met.

On the standing issue the Mortgagee cites *Escobedo vs. Countrywide Home Loans, Inc.*, N. 09-cu-1557 2009 U.S. Dist. LEXIS 117017 (S.D. Cal. December. 15, 2009). In that case, the plaintiff filed a complaint, two counts of which were for breach of contract and declaratory relief. The allegations with respect to those counts were that the plaintiff, who was a mortgagor to Defendant Countrywide, attempted to effect a modification of his loan under the HAMP program in respect to which Countrywide had a Servicer Participation Agreement with Fannie Mae. Countryside refused to provide him with the requested modification. Countrywide moved to dismiss those two counts for failure to state a claim arguing that the Servicer Participation Agreement did not confer on plaintiff any individual rights and plaintiff could not be considered a third party beneficiary of that agreement, noting that agreement does not require Countrywide to modify eligible loans. Unlike this case, that case does not appear to have involved an actual HAMP Trial Period Plan agreement tendered by the mortgagee and entered into with and signed by, the borrower.

A situation like that in *Escobedo* was discussed in *Villa vs. Wells Fargo Bank*, No. 10-cv-81DMS, 2010 U.S. Dist. LEXIS 23741(S.D. Cal. Mar 15, 2010). The *Villa* court came to a similar conclusion on similar facts, although again there was no indication of the presence of any tendered and signed HAMP Trial Period Plan. A similar result on similar facts was reached in a case involving a more thorough discussion of the issue to wit: *Hoffman vs. Bank of America*, No. C-10-

6

2171SI 2010 U.S. Dist. LEXIS 70455 (W.D. Cal. June 30, 2010). What those cases have in common is that the asserted basis for each plaintiff's suit was that they were seeking loan modifications under the HAMP program and were claiming to be third-party beneficiaries under the basic servicing agreement between the mortgagee/servicer and Fannie Mae or a similar agency. None appears to have gotten to the point, present in this case, of there having been an actual tendered and signed Plan. Indeed, the facts appear to be in all of those cases that the mortgagee participator in the HAMP program, for whatever reason, did not entertain or tender to the applicant a Plan (or at least the decisions do not refer to any such). And therein lies the difference between those cases and this.

That said, however, treating the Plan at issue here as analogous to a binding contract for stay relief disposition purposes, what remains is essentially whether the Mortgagee party to that Plan or contract was within its so-called "rights" by not offering the Debtor a second stage permanent modification, or refusing to effectuate such on the indicated grounds. Exhibit 11 is that Plan. It is signed by the Debtor and his wife. While the Plan says it will not become effective unless and until it is signed by the Mortgagee (and that exhibit does not contain the Mortgagee's signature) it has not taken the position that it fails for that reason. And given the subsequent actions of accepting the trial period payments, etc., under it, the It could not successfully take that position anyway. Paragraph 1 of that Plan deals with the borrowers' representations, one of which is an affirmation of the income figures presented incident to the application. Paragraph 2 F essentially states that if the income representations which were the basis for tendering the Plan "are no longer true and correct at any time during the trial period," the permanent modification will not take effect and the Plan will terminate. Paragraph 3 of the Plan, relating to the end permanent modification, indicates in effect the underlying loan documents will be modified by that modification, if the Paragraph 1

7

representations "continue to be true in all material respects," and if the Lender determines that the applicants qualify. Exhibit 5, a description of the HAMP program, says the following, among other things:

> Upon Receipt of the Trial Period Plan from the borrower, the servicer must confirm that the borrower meets the underwriting and eligibility criteria.***********
>
> If the servicer determines that the borrower does not meet the underwriting and eligibility standards of the HAMP after the borrower has submitted a signed Trial Period Plan to the servicer, the servicer shall promptly communicate that determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative.

In this Court's view, the sum, substance, meaning, and legal effect of the foregoing is that (1) a primary underwriting eligibility criterion is that the monthly mortgage payment ratio prior to the modification be greater than 31%; (2) that ratio is calculated at the time the HAMP application is initially submitted based on information extant at that time; (3) if that submitted information meets that particular criteria, a HAMP Trial Period Plan can be tendered and entered into; and (4) if, during that trial period, for instance, it appears that the gross monthly income of the borrower has increased over that used to calculate the ratio and initially put in place the Trial Period Plan, with the result that the monthly mortgage payment ratio is now less than the qualifying 31%, the Mortgagee is not obligated to tender the permanent modification documents, and by its terms the Plan terminates. It is not a matter of determining only if the gross monthly income figure used initially was correct at the time; it is also a matter, even if that figure was correct then, of whether it has since then changed in a way that affects the ratio and thus eligibility. The sense emanating from the relevant documents is that the borrower needs to meet the 31% criteria both (a) when the initial application was made

8

and the Trial Period Plan was initially put in place, and (b) when the permanent modification was to be put in place at the end of the trial period. The Court finds as a matter of fact the latter was not the case in this instance, and therefore the Mortgagee, by the stated terms of the arrangement, was within its rights in declining to effectuate a permanent modification pursuant to the Plan. Furthermore and consequently, the Debtor cannot use that HAMP Trial Period Plan as a defense to the motion to lift the stay and there is no other defense.

It should again be noted that Debtor and his wife were tendered the referred to foreclosure prevention alternative which they apparently chose not to avail themselves of for what they felt were good and sufficient reasons. While that does not bear on the result, given the Court's indicated conclusion they may or may not have second thoughts about that choice, if it remains or became available to them. Given the facts of this case and its procedural history, it would be entirely appropriate and consistent with the equities of the situation (both as respects this Debtor and the mortgage market generally) if it were.

Movant shall present an appropriate order.

**Signed on November 04, 2010**

                          **/s/ Walter Shapero**
                       **Walter Shapero**
                       **United States Bankruptcy Judge**